IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MARK A JOSEPH,

                            Plaintiff,                         OPINION AND ORDER

     v.

                                                     22-cv-40-wmc

XAVIER BECERRA,
HEALTH AND HUMAN SERVICES,
ROCHELLE WALENSKY, CENTERS
FOR DISEASE CONTROL AND
PREVENTION, LOUIS DEJOY, and
THE UNITED STATES OF AMERICA,

                         Defendants.

     *Pro se* plaintiff Mark A. Joseph contends that the United States and various federal agencies and officials have or are enforcing masking requirements in response to the COVID-19 pandemic that violate his constitutional and statutory rights.  Joseph also seeks preliminary injunctive relief.  (Dkt. #18.)  Defendants moved to dismiss Joseph's amended complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted.  (Dkt. #9.)

     In response to defendants' motion to dismiss, Joseph twice moved to amend his complaint and provided a proposed second and then a proposed third amended complaint. (Dkt. ##12, 13, 19, 20.)  In his proposed second amended complaint, Joseph would drop 23 of his original 28 claims, as well as add a claim under 42 U.S.C. § 1983 and the Department of Veterans Affairs and its Secretary as additional defendants.  Joseph would drop his § 1983 claim and add some clarifying language in this proposed third amended complaint, without adding new allegations.  (Dkt. #20.)  Since Joseph has already amended

his complaint once, he may now amend only with the court's consent, which the court must freely give "when justice so requires."  Fed. R. Civ. P. 15(a)(2).

Defendants opposed Joseph's first motion to amend, arguing that granting it would be futile because the proposed second amended complaint still fails to state a claim upon which relief can be granted.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (including futility among reasons to deny leave to amend).  Joseph's proposed third amended complaint drops another claim and makes some minor clerical changes.  Determining whether accepting Joseph's proposed third amended complaint would be futile calls for the same analysis as a motion for dismissal under Federal Rule of Civil Procedure 12(b)(6).

Specifically, a Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint, *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012), which the court may grant if a complaint lacks sufficient facts "to 'state a claim to relief that is plausible on its face[,]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A facially plausible complaint need not give "detailed factual allegations," but it must allege facts sufficient "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Thus, the parties' now dueling motions to dismiss and amend present two sides of the same coin:  if Joseph's proposed third amended complaint cannot overcome defendants' pending objections to the amended complaint, then the court must deny leave to further amend and grant defendants' motion to dismiss. For the following reasons, the court must do just that.

2

ALLEGATIONS OF FACT[1]

Joseph is a combat veteran and former United States Postal Service employee.  In 2020, the CDC recommended wearing a face mask indoors and in public spaces to help prevent the spread of the COVID-19 virus.  The Department of Veterans Affairs ("VA") and the Postal Service both implemented masking requirements at their facilities based on this recommendation.  State and local health departments in Wisconsin allegedly did the same in order to continue receiving federal funding.

Joseph refuses to wear a mask, which he views as a medical device and religious symbol.  A Christian, Joseph claims to practice his faith in part by "taking a stance against what he sees and understands to be evil or unlawful," such as the masking requirements.  (Dkt. #20 at 10.)  Specifically, Joseph alleges that the masking requirements violate several of the tenets of his faith and promotes "Collectivism" over his individual rights.  By promulgating a masking policy, Joseph further alleges that the federal government is seeking to establish "a nameless and covert religion/religious order" that "is a type of scientism . . . discriminatory and divisive in nature and in practice." (*Id.* at 3.)  For Joseph, at least, being made to wear a mask is akin to suffering forced medical treatment and to providing medical care involuntarily to those around him.  Finally, Joseph alleges that promotional campaigns for masking "defame" those like himself "who are against such measures." (*Id.* at 5.)

Moreover, because Joseph will not wear a mask, he has been denied employment as

---

[1] The court draws the following facts from Joseph's proposed third amended complaint, accepting as true all of the well-pleaded factual allegations and drawing all reasonable inferences in his favor. *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017).

well as in-person medical care and has been unable to participate in local civic activities. For example, the Postal Service allegedly suspended Joseph from his job beginning in August of 2020 for refusing to wear a mask, disqualifying him from receiving unemployment benefits or "the special covid pay" available at that time. (*Id.* at 3.) Joseph is also unable to receive any in-person medical care at VA facilities and claims that the VA would send "the police after him" if he arrived maskless to his scheduled appointments. (*Id.* at 6.) Similarly, at various points during the last two years, Joseph has also been unable to attend indoor events at local public schools or participate in other local civic activities, such as jury duty, had his ability to travel and plan trips limited, and had disagreements with family about masking.

## OPINION

Plaintiff has sued defendants for implementing allegedly unlawful masking requirements under multiple legal theories. He alleges violations of his First, Fifth, and Thirteenth Amendment rights under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and of the Religious Freedom Restoration Act ("RFRA"). He also claims that the Postal Service violated Wisconsin law. The court will address each claim in turn.[2]

---

[2] Plaintiff's proposed amended pleading also references the Federal Torts Claim Act (FTCA) and 18 U.S.C. § 242, which subjects state and federal officers to criminal liability for constitutional violations. The latter criminal statute does not help plaintiff in this civil lawsuit. *See Nicolai v. State of Wisconsin*, No. 21-cv-414, 2021 WL 3685193, at *2 (E.D. Wis. April 22, 2021) (private citizens may not file lawsuits under 18 U.S.C. §§ 241, 242). As for the FTCA, it "allows a plaintiff to bring certain state-law tort suits against the Federal Government." *Brownback v. King*, 141 S. Ct. 740, 745 (2021). However, plaintiff has dropped his claims of assault (*see* dkt. #13 at 28, dkt. #20), and he does not otherwise specifically allege any other state-law tort against a federal employee acting within the scope of his or her employment.

I. **Constitutional Claims under** *Bivens*

In *Bivens*, the Supreme Court recognized an implied, civil cause of action for damages against federal officers in their individual capacities for certain constitutional violations. *Engel v. Buchan*, 710 F.3d 698, 703 (7th Cir. 2013). However, because plaintiff is suing the United States, some of its federal agencies and public officials in their official capacities, no *Bivens* claims are viable. *See FDIC v. Meyer*, 510 U.S. 471, 475, 484-86 (1994); *see also McCloskey v. Mueller*, 446 F.3d 262, 272 (1st Cir. 2006) (*Bivens* does not "permit suits against the United States, its agencies, or federal officers sued in their official capacities"); *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009) (same).

Even if plaintiff were permitted to name any of the public officials in their individual capacities, plaintiff's specific constitutional claims could not proceed. The Supreme Court has only recognized an implied civil cause of action under *Bivens* in three, specific circumstances: (1) a Fourth Amendment claim against FBI agents for handcuffing a man in his home without a warrant, *Bivens*, 403 U.S. 388; (2) a Fifth Amendment sex discrimination claim against a congressman for firing his female administrative assistant, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) an Eighth Amendment claim brought by a prisoner's estate against prison officials for failure to provide adequate medical care for his asthma, *Carlson v. Green*, 446 U.S. 14 (1980). In contrast, each of plaintiff's First, Fifth, and Thirteenth Amendment claims arise in very different circumstances from any of these three, and the Supreme Court has recently emphasized that recognizing any new cause of action under *Bivens* is "a disfavored judicial activity," *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (citation omitted), since generally "creating a cause of action is a legislative

endeavor," *id.* at 1802.

Plaintiff also seeks injunctive relief, but he has not stated viable constitutional claims. *See Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) (allowing suit for declaratory and injunctive relief against the Department of Health and Human Services).  Thus, as set forth in more detail below, none of the claims set forth in plaintiff's proposed third amended complaint can proceed under *Bivens*.

## A. First Amendment

First, plaintiff unsuccessfully attempts to plead claims under the Establishment and the Free Exercise Clauses of the First Amendment.

### 1.  The Establishment Clause

The Establishment Clause states that Congress shall "make no law respecting an establishment of religion."  Recently, the Supreme Court explained that the Establishment Clause is to be interpreted by "reference to historical practices and understandings." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2428 (2022).  Here, plaintiff claims that defendants have established "scientism," a "covert" religion where science is considered "d[i]vine" and is interpreted by the CDC, a "scientific based priesthood."  (Dkt. #20 at 16.)  As such, he characterizes masking requirements as "a type of ritual and/or practice of faith" that defendants then induced state and local governments into enforcing by offering federal subsidies.  (*Id.*)

Thus, plaintiff's Establishment Clause claim is not only based on a *Bivens* claim not yet recognized by the Supreme Court, but also on the "faulty premise" that "scienticsm"

is a religion.  *See Daniel Chapter One v. FTC*, 405 F. App'x. 505, 506 (D.C. Cir. 2010) (rejecting "scienticsm" as a religion and affirming dismissal of Establishment Clause claim); *cf. Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 520-21 (9th Cir. 1994) ("neither the Supreme Court, nor this circuit, has ever held that evolutionism or secular humanism are 'religions'").  Although couched in religious terms, therefore, plaintiff's Establishment Clause claims boil down to defendants allegedly making policy decisions based on evolving scientific data to which not all experts necessarily agree, not establishing a religion. Admittedly, the governing case law does not precisely define the contours of what constitutes "religion," but "courts are well-equipped to weed out spurious Establishment Clause 'religions' on grounds of common sense."  *Sevier v. Lowenthal*, 302 F. Supp. 3d 312, 320-21 (D.D.C. 2018).  Thus, plaintiff's proposed amended complaints provide no basis to infer that masking requirements advance any religious belief as opposed to science-based health policy, even if an implied cause of action were cognizable under *Bivens*.

## 2.  The Free Exercise Clause

As for plaintiff's free exercise claims, the government cannot impose a "substantial burden on a central religious belief or practice."  *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013).  Even construed liberally, however, plaintiff's allegations do not explain which of his specific, central religious beliefs is impinged by masking requirements.  Instead, plaintiff merely alleges that his Christian faith calls him to resist the masking requirements and deceiving others by suggesting he agrees with those requirements, that he cannot be made to provide a service to others without his consent, and that wearing a mask violates several of the Ten Commandments.  Such general allegations do not appear to support a

7

free exercise claim, much less one that would give rise to an implied right to a *Bivens*-type remedy.

Moreover, even if wearing a mask has substantially impaired plaintiff's ability to exercise his faith while receiving in-person medical treatment, working, traveling in public spaces, or attending public events, rules that have only an "incidental effect of burdening a religious practice" will pass muster under the Free Exercise Clause *provided* they are applied neutrally and generally applicable. *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 631 (7th Cir. 2007).

As for their neutrality, plaintiff does not allege in his proposed pleading that *any* of the masking policies or recommendations he is challenging refer to religion in their text or were promulgated out of animosity towards religion. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533, 540 (1993) (to determine the object of a law, a court starts with the text and considers the historical background of the decision being challenged). To the contrary, plaintiff acknowledges that the policies were implemented "[i]n an effort to address a new virus," COVID-19. (Dkt. #13 at 5.) Still, a rule may not be generally applicable, even if facially neutral, if it provides "a mechanism for individualized exemptions" or "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021) (citations omitted).

Here, plaintiff alleges elsewhere in his proposed third amended complaint that people do not have to wear masks when "engag[ing] in secular matters such as eating, drinking, [and] taking medicine." (Dkt. #20 at 20.) However, these are not individualized

exemptions or "secular matters";  rather, wearing a mask while doing any of these necessary things is simply not possible.  Plaintiff also alleges generally that people who have "a doctor's note due to a disability," the "permission [of] 'authority' figures," and "proof of full vaccination" are exempted.  (*Id.*)  But plaintiff does not clarify which of these exemptions are allegedly available under defendants' challenged policies or recommendations.  For example, the VA states on its website that regardless of COVID-19 community levels, everyone who enters a VA health facility must wear a mask.  *See* Coronavirus FAQs: What Veterans Need to Know, https://www.va.gov/coronavirus-veteran-frequently-asked-questions/.

Moreover, a "neutral law of general applicability is constitutional if it is supported by a rational basis." *Illinois Bible Coll. Assoc. v. Anderson*, 870 F.3d 631, 639 (7th Cir. 2017). In the United States, more than 98 million people have been infected with COVID-19 and more than 1 million have died already.  *See* COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/#datatracker-home.  The virus spreads "when an infected person breathes out droplets and very small particles that contain the virus," which "can be breathed in by other people."  How COVID-19 Spreads, https://www.cdc.gov/socialmedia/syndication/405380/403327.html.  Reducing its transmission is "unquestionably a compelling interest." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam).  As many courts have now recognized, "requiring that people wear masks is a rational way to do that." *Mahwikizi v. Centers for Disease Control & Prevention*, 573 F. Supp. 3d 1245, 1254 (N.D. Ill. 2021); *see also Denis v. Ige,* 538 F. Supp. 3d 1063, 1078 (D. Haw. 2021) (masking is "a rational measure designed

to accomplish" the goal of protecting people from COVID-19); *Firszt v. Bresnahan*, Case No. 21-cv-6798, 2022 WL 138141, at *2 (N.D. Ill. Jan. 14, 2022) (public-school mask mandate "has a rational basis due to the severity of the COVID-19 pandemic and the need to prevent the spread of the disease"); *Oakes v. Collier Cnty.*, Case No. 20-cv-568-FTM-38NPM, 2021 WL 268387, at *3 (M.D. Fla. Jan. 27, 2021) ("It would be difficult to contend with a straight face that a mask requirement does not bear a rational relation to protecting people's health and preventing the spread of Covid-19").  Finally, masking is far less restrictive than other measures, such as quarantines or stay-at-home orders. Accordingly, plaintiff's First Amendment claims will be dismissed.

## B. Fifth Amendment

Next, plaintiff alleges that defendants have violated his Fifth Amendment rights in five ways.  *First*, plaintiff alleges that he is being "treated, handled, and regarded as a direct threat to himself or others, and presumed to be guilty."  (Dkt. #20 at 17.)  Plaintiff does not explain by whom he is being "presumed guilty" or how, but a presumption of innocence has been recognized only in the context of a criminal trial.  *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 533 (1979) ("[t]he presumption of innocence is a doctrine that allocates the burden of proof in criminal trials"); *Taylor v. Kentucky*, 436 U.S. 478, 484 n.12 (1978) ("[t]he presumption operates at the guilt phase of a trial to remind the jury that the State has the burden of establishing every element of the offense beyond a reasonable doubt"). The fact that plaintiff's refusal to wear a mask is a cause for suspicion is neither surprising nor actionable.

*Second*, plaintiff contents that the VA "coerced" his "DNA" from him for research

10

and data collection without compensation.  (Dkt. #13 at 18.)  Again, plaintiff provides no factual details describing what was collected from him, nor when or under what circumstances this occurred.  *See Horne v. Dept. of Agriculture*, 569 U.S. 513, 525-26 (2013) (a Fifth Amendment claim "is premature until it is clear that the Government has both taken property *and* denied just compensation").  To the extent plaintiff is referring to COVID-19 testing itself, his allegations suggest that he has not submitted to a COVID test.  (Dkt. #20 at 15.)  Nor can the court infer from this allegation that plaintiff has a constitutionally protected property interest in his DNA under the circumstances here.  *Cf. Boling v. Romer*, 101 F.3d 1336, 1340-41 (10th Cir. 1996) (requiring DNA samples from inmates before their release on parole did not unconstitutionally deprive plaintiff of a property interest in his blood without due process or just compensation); *Johnson v. Quander*, 370 F. Supp. 2d 79, 102 (D.D.C. 2005) ("this Court does not believe that a DNA sample is akin to a right in property"), *aff'd*, 440 F.3d 489 (D.C. Cir. 2006).  Indeed, even if taking a COVID-19 swab test amounts to the taking of DNA, there is no reason to think it was retained except for testing that benefits both plaintiff and the public, making no additional compensation necessary.

*Third*, plaintiff claims that the VA is subjecting him to "potential self-incrimination" by trying to force him to take a COVID-19 test to receive certain medical services.  (Dkt. #20 at 18.)  As noted, plaintiff does not specifically allege that he has ever taken a COVID test or had to disclose the results.  Regardless, plaintiff's claims do not arise out of any criminal proceedings.  *See* U.S. Const. amend V ("[no] person . . . shall be compelled in any criminal case to be a witness against himself").  Finally, even if such test results would

11

be "statements" under the Fifth Amendment, plaintiff does not allege that any such "statements" have ever been used against him in a criminal case. *See Chavez v. Martinez*, 538 U.S. 760, 766 (2003) (defendant could not allege a Fifth Amendment violation "since [he] was never prosecuted for a crime" nor were his statements "admitted as testimony against him in a criminal case").

While plaintiff also argues that his refusal to take a COVID-19 test could lead to his criminal prosecution if he were to arrive to an in-person medical appointment and (presumably) insist on treatment (dkt. #16 at 4), plaintiff is asking the court to draw these inferences based on mere (if not frivolous) speculation. In fact, plaintiff alleges in his proposed third amended complaint that he has been threatened with arrest for not wearing a mask, not because of any failure to take a COVID-19 test. (Dkt. #20 at 2, 6.) Accordingly, plaintiff lacks standing to proceed on such a dubious and unlikely injury.

*Fourth*, plaintiff alleges that he cannot breathe "freely" while wearing a mask. Assuming plaintiff is intending to claim a substantive due process violation based on this allegation, his claim fails as a matter of law. Certainly, being denied air may be actionable, but being denied the "cleanest air readily available" (dkt. #20 at 18) does not implicate a fundamental right. *Health Freedom Def. Fund, Inc. v. City of Hailey*, 590 F. Supp. 3d 1253, 1267 (D. Idaho Mar. 10, 2022) (plaintiffs do not "have a fundamental right to breathe fresh air unencumbered by a mask"); *Denis v. Ige*, 538 F. Supp. at 1081 (the "right to breathe oxygen without restriction" is not a fundamental right). The mask mandates need only pass rational basis review, which they do easily. As noted above, masking

requirements instituted in response to the ongoing pandemic are reasonably related to preventing the spread of COVID-19 and saving lives.[3]

*Fifth*, plaintiff alleges generally that defendants cannot condition medical services, travel, and attendance at sports or entertainment events on masking or a COVID test. This conclusory allegation does not forestall dismissal. *See Twombly*, 550 U.S. at 555 ("on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation" (citation omitted)). Plus, plaintiff has not plausibly alleged that masking or testing requirements are an irrational response to the pandemic. The Constitution allows for "manifold restraints" on individuals, particularly in pursuit of the "common good," because "organized society could not exist without safety to its members." *Jacobson v. Massachusetts*, 197 U.S. 11, 26 (1905). In short, despite great creativity, plaintiff has pleaded no factual or legal basis to proceed on his Fifth Amendment claims.

## C. Thirteenth Amendment

Plaintiff alleges that by having to wear a mask, he is being forced to provide a medical service to others in violation of the Thirteenth Amendment's prohibition on involuntary servitude. The court understands plaintiff to be alleging that he can bring a claim under the Thirteenth Amendment under *Bivens* and because the Fifth Amendment includes the right to petition the government for a redress of grievances. Even so, plaintiff has once again alleged no plausible claim for relief, not to mention demeaned the kind of

---

[3] Should plaintiff have some condition that actually inhibits sufficient air getting to his lungs while wearing a mask, perhaps he could pursue that claim, but not only is that beyond the scope of any of his pleadings to date, it would require medical evidence for him to proceed.

13

injury that the Thirteenth Amendment was enacted to prohibit. Indeed, "the phrase 'involuntary servitude' was intended to extend to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results." *United States v. Kozminski*, 487 U.S. 931, 942 (1988) (citation omitted). As other district courts have explained, the inconvenience of wearing a mask to prevent communicable disease does not plausibly or even remotely equate to any form of slavery. *E.g.*, *Denis v. Ige,* 557 F. Supp. 3d 1083, 1095 (D. Haw. 2021) (plaintiff's argument that masking is "a sign of slavery" "both trivializes the horrors of slavery and fundamentally misconstrues the nature of the Mask Mandates"); *Gunter v. N. Wasco Cnty. Sch. Dist. Bd. of Educ.*, 577 F. Supp. 3d 1141, 1151 n.7 (D. Or. 2021) ("plaintiffs' allegation that requiring masks equates to slavery or placing children into servitude [is] utterly without merit" and "reflects a serious misunderstanding of what constitutes slavery").

## II. Religious Freedom Restoration Act

Plaintiff also alleges that the masking requirements violate RFRA by disfavoring "[t]hose who share the same beliefs" as plaintiff. (Dkt. #20 at 20.) The only defendant plaintiff references in relation to this claim is the VA. Specifically, plaintiff alleges that he has felt substantial pressure to wear a mask at the VA Hospital in violation of his beliefs in order to receive medical services and has been threatened with arrest and prosecution if he were to attend an appointment without a mask.[4]

---

[4] Plaintiff's complaint also directs the court to "[s]ee count of violation of the first amendment for more relevant details supporting this count." (Dkt. #20 at 20.) However, the court will not guess at which additional allegations plaintiff is referencing, nor do any such allegations appear to change the outcome here.

RFRA provides that a government may not substantially burden a person's religious exercise unless doing so is the least restrictive means to further a compelling governmental interest.  42 U.S.C. § 2000bb-1(b).  Again, preventing the spread of COVID-19 is a compelling interest.  *Cuomo*, 141 S. Ct. at 67.  As noted above, while plaintiff generally alleges that exemptions to mask mandates exist, the VA requires everyone entering its health facilities to wear a mask.

Regardless, the court cannot reasonably infer that the VA's requirement is not the least restrictive means to further the compelling interest of preventing the spread of a highly contagious droplet-based virus, especially in a healthcare facility where:  some treatment must be in-person; other patients and visitors are more likely at risk of developing serious complications if they get COVID-19; and staffing shortages caused by the illness can impact the overall provision of care.[5]

## III.  Wisconsin's Medical Licensing Statute

Finally, plaintiff contends that by forcing him to wear a mask to help stop the spread of COVID-19, the Postal Service was practicing medicine and forcing plaintiff into "practicing medicine on other Wisconsin residents without a license" in violation of Wisconsin's medical licensing statute, Wis. Stat. § 448.03.  (Dkt. #20 at 21.)  A mask is

---

[5] Plaintiff argues in response to defendants' opposition to his motion for leave to amend that masking is not the least restrictive means of combating COVID-19 and suggests "natural therapeutics" and "supplements" instead.  (Dkt. #16 at 4.)  However, plaintiff does not specify what these alternative measures are nor how they would prevent illness, and he ignores the specific contexts in which masking has allegedly been recommended and enforced.  Even at the motion to dismiss stage, the court will not second-guess near universally accepted health care standards absent detailed pleadings to the contrary.

a preventative health measure, but plaintiff cannot plausibly allege that any defendant is practicing medicine by following CDC guidelines in requiring individuals to wear face masks. *See Bush v. Fantasia*, No. 21-cv-11794-adb, 2022 WL 4134501, at *8 (D. Mass. Sept. 12, 2022) (requiring masking is no more a "medical treatment" "than requiring shoes in public places . . . or helmets while riding a motorcycle") (citation omitted)); *Edtl v. Best Buy Stores*, No. 22-cv-00003-ar, 2022 WL 11436434, at *4 (D. Or. Oct. 13, 2022) ("The court does not construe the fundamental right to refuse medical treatment so broadly as to include wearing a face covering"). Regardless, plaintiff has no cause of action under this state statute. Rather, the Wisconsin Medical Examining Board and the Wisconsin Attorney General are responsible for its enforcement. Wis. Stat. § 448.11. Accordingly, this claim must also be dismissed, as will plaintiff's lawsuit.

ORDER

IT IS ORDERED that:

1)  Plaintiff Mark Aaron Joseph's first motion for leave to amend his complaint (dkt. #12) is DENIED as moot.

2)  Plaintiff's second motion for leave to amend his complaint (dkt. #19) is DENIED.

3)  Defendants' motion to dismiss (dkt. #9) is GRANTED.

4)  Plaintiff's motion for a preliminary injunction (dkt. #18) is DENIED as moot.

5)  The clerk of court is directed to enter judgment accordingly and close this case.


Entered this 29th day of November, 2022.



BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

17